FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANDRES AGUIAR,

                Petitioner,              01 CV 4117 (SJ)

-against-                          **MEMORANDUM AND ORDER**

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------------------X

A P P E A R A N C E S:

Andres Aguiar
# 37249-053
U.S.P. Beaumont
P.O. Box 26030
Beaumont, TX 77720-6030
Petitioner, *Pro Se*

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, NY 11201
By:    Michael H. Warren, Esq.
Attorney for Respondent


JOHNSON, Senior District Judge:

    Before the Court is Andres Aguiar's ("Petitioner") *pro se* motion to vacate his judgment of conviction and to set aside his sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"). For the reasons set forth below, Petitioner's § 2255

1

Motion is, in part, DENIED. The Court shall conduct an evidentiary hearing on the one remaining issue.

## BACKGROUND

On June 25, 1991, Petitioner was arrested at John F. Kennedy airport by agents of the United States Customs Service ("Customs"), based on the cooperation of George Albino ("Albino"), who informed agents, after they seized two packages containing heroin from his luggage, that he had been hired by Petitioner to import heroin from Belgium to New York. (Resp. Opp'n at 2.) Customs agents then wired up Albino so he could participate in a controlled delivery, which resulted in Petitioner's arrest. (Id.)

Subsequent to Petitioner's arrest, Albino entered into a formal cooperation and plea agreement with the government pursuant to which Albino stated that Petitioner instructed him to deny all of the allegations against them. (Id. at 2-3.)

In early October 1991, Albino informed the government that he no longer would cooperate because he had received written and verbal threats from Petitioner and feared for his family's safety. (Id. at 3.) On October 11, 1991, pursuant to a search warrant, a Customs agent seized letters from Albino's prison cell urging Albino to exculpate Petitioner. (Id.) Petitioner's fingerprints were recovered from one of the letters. (Id.)

P-049

Albino was called as a prosecution witness at Petitioner's jury trial and refused to testify, despite the fact that his testimony would render him immune from prosecution. (Id. at 3-4.) As a result, the Court conducted a Mastrangelo hearing and concluded that Petitioner had procured Albino's unavailability at trial. (Id. at 4.) Thereafter, the Court allowed testimony regarding Albino's statements to the government inculpating Petitioner and explaining Albino's reasons for refusing to testify. (Id.)

Petitioner was convicted of conspiracy to import heroin, in violation of 21 U.S.C. § 963, importing heroin, in violation of 21 U.S.C. §§ 952, 960, and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841. Petitioner was also convicted of witness tampering, in violation of 18 U.S.C. § 1512(b). His presentence investigation report ("PSR") provided a sentencing guidelines range of 360 months to life imprisonment, based on Petitioner's total offense level and his criminal history category. (Id.) On March 17, 1992, Petitioner was principally sentenced, as a career offender, to three concurrent terms of life imprisonment for the narcotics charges and to a concurrent ten (10) year sentence for the witness tampering charge.

Petitioner appealed his conviction to the Second Circuit, arguing that the trial court had improperly permitted the introduction of Albino's extra-judicial statements. On September 10, 1992, the Court of Appeals affirmed the judgment

3

P-049

of conviction. United States v. Aguiar, 975 F.2d 45 (2d Cir. 1992). On October 12, 1994, Petitioner, *pro se*, filed a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure on the basis of allegedly newly discovered evidence, including an affidavit from Albino. On July 24, 1998, this Court denied Petitioner's Rule 33 motion and the Second Circuit, on August 12, 1999, dismissed Petitioner's appeal of the ruling, finding that it "lack[ed] an arguable basis in fact or law." United States v. Aguiar, No. 98-1475 (2d Cir. 1999). On June 12, 2000, the Supreme Court denied his petition for a writ of certiorari. Aguiar v. United States, No. 99-9472 (2000).

On June 14, 2001, Petitioner filed the instant § 2255 motion, claiming that: (1) his sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000), because the drug weight involved in his offenses increased his sentence beyond the statutory maximum, but was not alleged in the indictment or submitted to the jury to be proven beyond a reasonable doubt (Pet. at 4-5, 8-34; see also Am. Mot.); and (2) his trial counsel, Jeremy Gutman, Esq. ("Trial Counsel"), was ineffective in that Trial Counsel (1) prevented Petitioner from testifying in his own defense during trial, (2) failed to raise with the jury contradictions in the case agent's grand jury and trial testimony regarding the location of the heroin during the controlled delivery (3) never took issue with the designation in this case of – or even informed Petitioner that he faced being deemed – a career offender, and (4) never

P-049

alerted Petitioner of the potential life sentence he faced as a career offender.

On February 22, 2005, this Court issued a memorandum and order (the "February 22, 2005 Order") stating the Court's findings that (1) the petition was not timely filed, and (2) that Petitioner was ineligible for relief under Apprendi, and thus denied Petitioner's motion. See 01 CV 4117, Entry No. 9. However, after reviewing Petitioner's motion for reconsideration and his arguments contained therein, the Court granted the motion to reconsider on April 29, 2005 ("April 29, 2005 Order"), and directed the Clerk of the Court to reopen the case. On September 13, 2006, the Court appointed counsel for Petitioner. The Court shall now address Petitioner's allegations of ineffective assistance of counsel.[1]

## DISCUSSION

### I. Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test to determine whether a counsel's assistance was ineffective. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional

---

[1] Despite Petitioner's arguments to the contrary in his Response to the Government's Memorandum of Law in Opposition to Petition Under 18 U.S.C. § 2255, the Court stands by its finding in the February 22, 2005 Order that Petitioner is not eligible for relief under Apprendi. Thus, consistent with the parameters of consideration set forth in the April 29, 2005 Order, the Court's discussion herein is limited to the allegations of ineffective assistance of counsel.

5

norms." Id. at 688. When evaluating counsel's performance, a court must examine the circumstances of counsel's conduct from counsel's perspective at the time rather than from hindsight. Id. at 689. Moreover, in order to satisfy the first prong of Strickland, Petitioner must overcome the strong presumption that the challenged action or inaction may be considered reasonable strategy. Id.

Second, the defendant must show that counsel's performance prejudiced his defense. Id. at 692. To show prejudice, there must be a "reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." Id. at 694. As the Supreme Court stated, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Of course, a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.

Unless Petitioner satisfies both of the requirements of Strickland, it cannot be said that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

6

P-049

### A. Denial of Right to Testify

Petitioner claims he was denied effective assistance of counsel because Trial Counsel did not permit Petitioner to testify during his trial. Trial Counsel disputes Petitioner's version of events. See Gutman Affirm. ¶¶ 11-12, Nov. 23, 2005.

It is undisputed not only that the choice of whether to testify is for a defendant, not counsel, to make, but also that counsel at trial has a duty to advise his or her client of the right to testify. Brown v. Artuz, 124 F.3d 73, 74 (2d Cir. 1997). Failure to do so, or, as Petitioner claims, overriding a client's desire to testify, could be ineffective assistance of counsel and must be analyzed under the Strickland framework. Id.

Applying that standard here, even if Trial Counsel did override Petitioner's decision to testify, Petitioner was not prejudiced by his inability to do so. Despite his assertion that, had he been able to testify he would have provided to the jury, through both his testimony and related records, a version of events that would have exculpated him, the Court does not believe a rationale jury would have credited Petitioner's proffered testimony and supporting documentation in light of the evidence elicited at trial that tied Petitioner to the charged crimes. The Court has closely re-examined the trial transcripts and remains convinced that, even if Petitioner testified as proposed, there is not a reasonable probability that the result

7

P-049

would have been different.

Moreover, the Court does not credit Petitioner's underlying assertion that Trial Counsel did not permit Petitioner to testify. In fact, during the course of the trial, circumstances arose that required the Court to conduct an evidentiary hearing outside of the presence of the jury. During that hearing, Petitioner testified, clearly demonstrating that Trial Counsel was not in a position to deny Petitioner his right to take the stand in his own defense. Petitioner's ability to testify during the hearing completely undermines his claim that Trial Counsel would not allow him to testify in front of the jury at trial.

### B. *Testimony Regarding Location of Drugs Seized*

Petitioner also asserts that Trial Counsel was ineffective for failing to raise at trial the fact that the case agent, who testified at trial that the drugs remained in the suitcase that Petitioner took from Albino at the airport, had, in fact, previously testified in front of the grand jury that he (the case agent) had removed the drugs from the suitcase prior to the controlled delivery. Petitioner argues he was prejudiced by this oversight by Trial Counsel because, had Trial Counsel pointed this inconsistency out to the jury, it would have discredited the case agent's entire testimony.

The Court does not agree Petitioner suffered any such prejudice by Trial

8

Counsel's failure to raise this issue in front of the jury. First, even had Trial Counsel pointed out this inconsistency, the actual location of the drugs at the time of the controlled delivery was irrelevant, considering the evidence adduced at trial that connected Petitioner to a heroin importation scheme that involved Petitioner arranging for and sending Albino oversees to return to the United States with heroin. A reasonable jury would not have concluded that impeachment on a collateral issue would have undermined the case agent's overall testimony.

Moreover, Petitioner's failure to possess the heroin himself – if, in fact, the case agent truly had failed to return the drugs to the suitcase prior to the controlled delivery – would not have been fatal to his conviction on any of the three narcotics related counts. As the jury was instructed, a finding by the jury of either Petitioner's acting in concert or aiding and abetting another individual's possession and importation of the heroin was sufficient for the relevant elements of those charges. Thus, even if the jury believed that the case agent had spoken truthfully in front of the grand jury, and the jury then found that Petitioner never actually possessed the heroin, such a finding still would not have precluded the jury from subsequently convicting Petitioner on the importation and possession counts. Therefore, Petitioner was not prejudiced by Trial Counsel's failure to point out this particular inconsistency in the case agent's testimony.

P-049

### C.    *Applicability of the Career Offender Provision*

The Court need not dwell long on Petitioner's next contention, namely that Trial Counsel was ineffective for failing to argue that Petitioner did not qualify as a career offender for sentencing purposes. Petitioner asserts that he could not have been deemed a career offender because he was convicted of a narcotics conspiracy. Petitioner is not correct. His convictions in this case and his prior record plainly triggered the career offender provision of the United States Sentencing Guidelines. See U.S. Sentencing Guidelines Manual §§ 4B1.1-1.2. Thus, Trial Counsel was clearly not ineffective for failing to raise this meritless issue.

### D.    *Sentencing Exposure*

Finally, Petitioner states that, had Trial Counsel prior to trial informed Petitioner that he could have received life in prison were he to be convicted at trial, Petitioner would have pleaded guilty in return for the security of not being exposed to the possibility of a term of life. According to Petitioner, Trial Counsel's gross underestimation of Petitioner's sentencing exposure following a guilty verdict constitutes ineffective assistance of counsel.

On the law, Petitioner is correct. See United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998) (holding petitioner in that case was entitled to habeas relief for ineffective assistance of counsel when his counsel during the plea and trial

10

P-049

stage significantly underestimated that petitioner's sentencing exposure, which the petitioner relied on when choosing to risk going to trial instead of accepting a plea offer).

On the facts, Trial Counsel has affirmed that he may have "failed to advise [Petitioner] prior to trial that he could be deemed a 'career offender' and face a sentence of 360 months to life imprisonment." Gutman Affirm. ¶ 4. Moreover, Petitioner has submitted handwritten notes that he asserts we made by Trial Counsel to reflect Trial Counsel's view, prior to trial, as to what Petitioner's sentencing exposure would be should he lose at trial. 01 CV 4117, Entry, No. 1, Ex. 12. Trial Counsel does not dispute the handwriting is his but states he remembers nothing else in relation to the calculations he made. Gutman Second Supp. Affirm., ¶¶ 2-3, Apr. 17, 2006. Finally, Petitioner asserts that, had be been informed of the correct exposure prior to trial, he would have pleaded guilty instead of risked conviction at trial.

For the Court to resolve this particular issue, further fact-finding is necessary, in particular what Petitioner, prior to trial, actually believed his sentencing exposure would have been were he to lose at trial, and whether, if correctly informed at the time, he would foregone a trial and pleaded guilty. Therefore, the Court reserves ruling on this issue pending an evidentiary hearing

11

P-049

dedicated solely to exploring the facts as they relate to this issue alone.[2]

## II. Certificate of Appealability

The only remaining issue is the question of whether to grant a certificate of appealability regarding the claims the Court has dismissed in this opinion. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. U.S., No. 04 CV 1111, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted). Petitioner has made no substantial showing of the denial of a constitutional right with respect to the dismissed claims.

---

[2] The parties are on notice that, should Petitioner establish the requisite facts to prevail on this issue, at most he would be entitled to a new sentencing hearing and re-sentencing accordingly. See Gordon, 156 F.3d at 382 (noting that 28 U.S.C. § 2255 "leaves the choice of relief in a habeas case to the sound discretion of the judge ruling on the motion") (citing 28 U.S.C. § 2255)). However, the parties are also on notice that, should Petitioner prevail on this issue, the decision of the Court to impose a new sentence would not automatically preclude the Court from imposing the same sentence, if warranted, as the sentence that is currently in effect.

P-049

## CONCLUSION

After reviewing the filings and the relevant portions of the record, which were entirely sufficient to dispose of all but one of the ineffective assistance of counsel claims, Petitioner's § 2255 Motion is, in part, DENIED. Further, the parties shall appear before the Court on a date to be determined, to discuss the scheduling of an evidentiary hearing based solely on the issue of Petitioner's pre-trial knowledge of, and decision-making process with respect to, his sentencing exposure.

SO ORDERED.

/s/(SJ)

Dated: July 2 , 2007
Brooklyn, NY

Senior United States District Judge

P-049