UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
ANDRES AGUIAR,

        Petitioner,                                           01 CV 4117 (SJ)

        v.                                                 MEMORANDUM
                                                          AND ORDER

UNITED STATES OF AMERICA,

        Respondent.

---------------------------------------------------X

APPEARANCES

RUSSELL TODD NEUFELD
99 Hudson Street - 8th Floor
New York, NY 10013
By:   Russell Todd Neufeld
Attorney for Petitioner

UNITED STATES ATTORNEY
Benton J. Campbell
271 Cadman Plaza East
Brooklyn, NY 11201
By:   Michael Warren

JOHNSON, Senior District Judge:

        Petitioner Andres Aguiar ("Petitioner" or "Aguiar") has a petition pursuant to 28 U.S.C. § 2255 pending before this Court (the "Petition"). Presently before the Court are three motions: 1) Petitioner's motion to amend the Petition for

1

the second time, filed on June 16, 2009 ("Motion to Amend"); 2) Petitioner's pro se motion for this Court's recusal, filed on October 5, 2009 ("Motion for Recusal"); and 3) Petitioner's pro se motion for reconsideration of the Court's order of September 30, 2009, which denied Petitioner's request to hold these proceedings in abeyance ("Motion for Reconsideration") (collectively, the "Pending Motions"). On October 20, 2009, the Court denied all three Pending Motions on the record. This opinion is issued to explain the denials in greater detail.

In addition, the Court denies the only remaining claim of the Petition, concluding that Petitioner did not receive ineffective assistance of counsel with respect to his sentencing exposure.

## BACKGROUND

The facts underlying Petitioner's criminal conviction have been set out in greater detail in previous orders, particularly the Court's order of July 3, 2007 ("July 3, 2007 Order"). (Dkt. No. 27). Briefly summarized, Petitioner was arrested on June 25, 1991 at John F. Kennedy Airport, after United States Customs agents seized two packages of heroin from the luggage of George Albino ("Albino"), who informed the agents that he had been hired by Petitioner to import the heroin. After Albino agreed to carry out a controlled delivery in the arrivals area of the airport, agents observed Petitioner approach Albino, engage him in

P-049

conversation, then pick up the suitcase in which Albino had transported the drugs. Agents then arrested Petitioner.

Following Petitioner's arrest, Albino entered into a formal cooperation and plea agreement with the government. Petitioner's trial was set for October 23, 1991. The trial was delayed after Assistant United States Attorney A. Ross Pearlson ("AUSA Pearlson") requested an adjournment to investigate whether Petitioner had engaged in witness tampering to prevent Albino from testifying. The Government subsequently filed a superseding indictment, charging Petitioner with obstruction of justice by witness intimidation. Trial began on November 12, 1991 and on November 22, 1991, the jury found Petitioner guilty on all four counts of the superseding indictment.

The Court later sentenced Petitioner to life imprisonment on Counts One, Two, and Three (the drug counts) and to 120 months on Count Four (the obstruction of justice count). The Court of Appeals for the Second Circuit affirmed Petitioner's conviction. Thereafter, Petitioner filed a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. This Court denied the motion and the Second Circuit affirmed.

On June 14, 2001, Petitioner filed the Petition and later that year amended the Petition. The Petition (including the 2001 amendments thereto) made the following claims: first, that Petitioner's life sentences were imposed in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000), because the drug weight was not

3

submitted to the jury; and second, that Petitioner received ineffective assistance of counsel because his trial lawyer, Jeremy Gutman ("Gutman"), prevented Petitioner from testifying in his own defense, failed to impeach the case agent with contradictions in his testimony concerning the location of the heroin during the controlled delivery, failed to challenge Petitioner's designation as a career criminal offender, and never alerted Petitioner that he might be deemed a career criminal offender and face a life sentence if he was convicted after trial. In the July 3, 2007 Order, the Court denied all of these claims except for the last one: whether Petitioner received ineffective assistance of counsel when Gutman advised him of his potential sentencing exposure should he be convicted at trial. (Dkt. No. 42.) The Court scheduled a hearing on this sole issue.

After the July 3, 2007 Order was issued, Petitioner argued that he had a conflict of interest with Harry Batchelder, his court-appointed lawyer, and requested a new lawyer. On December 18, 2007, the Court relieved Mr. Batchelder and appointed Kevin Keating to represent Petitioner for purposes of the hearing. Mr. Keating made several requests to adjourn the hearing and failed to appear for several scheduled court appearances. On September 17, 2008 Petitioner moved the Court for appointment of yet another new lawyer. When the Court denied this request, Petitioner filed a writ of mandamus in the Second Circuit to compel this Court to assign him new counsel. While the writ of mandamus was pending, on November 21, 2008, this Court <u>sua sponte</u> reconsidered its decision and appointed

4

P-049

a new lawyer for Petitioner – Russell Neufeld. Since Mr. Neufeld's appointment, Petitioner has requested, and been granted, two adjournments of the hearing.

On June 16, 2009, Petitioner, through appointed-counsel, moved to amend his Petition for the second time. The Motion to Amend includes three claims: 1) Petitioner's sentence is illegal and must be vacated because the Court did not impose the required term of supervised release on Count Four (the witness tampering count); 2) ineffective assistance of counsel for Gutman's failure to object to the illegal sentence at sentencing or on appeal; and 3) this Court knowingly permitted the Government to use false evidence and testimony to convict Petitioner.

On June 24, 2009, the Court adjourned Petitioner's hearing, at Petitioner's request, to October 1, 2009. On September 22, 2009, Petitioner again moved to adjourn the hearing, this time alleging that he would shortly be filing a motion for this Court's recusal. (Dkt. No. 89). The Court denied the request to adjourn the hearing. On September 29, 2009, Petitioner requested yet again to adjourn the hearing and hold these proceedings in abeyance, on the grounds that he had filed a writ of mandamus in the Second Circuit to compel production of his sentencing transcript. (Dkt. No. 90). The Court denied this request and indicated that it would proceed with the hearing on the sole issue of whether Gutman provided ineffective assistance of counsel when he advised Petitioner of his potential sentencing exposure. On October 1, 2009, the date scheduled for the

5

hearing, the Court was unable to proceed with the hearing because Petitioner did not come to Court, claiming that he was sick. The hearing was adjourned to October 20, 2009. On October 5, 2009, Petitioner filed, pro se, the Motion for Recusal. (Dkt. No. 93). On October 14, 2009, Petitioner filed the Motion for Reconsideration, arguing that the Court should reconsider its decision not to hold these proceedings in abeyance in light of the Motion for Recusal.

On October 20, 2009, the parties appeared and after the Court denied Petitioner's Pending Motions from the bench, the only outstanding issue was Petitioner's motion for ineffective assistance of counsel based on his trial counsel's alleged failure to correctly inform him of the sentence he faced. The Government submitted an affidavit from AUSA Pearlson, dated October 19, 2009, and the Court commenced an evidentiary hearing and heard testimony from Petitioner's 1991 trial counsel, Jeremy Gutman ("Gutman").[1] Petitioner also testified at the October 20, 2009 hearing, affirming statements made in his motion papers alleging that Gutman told him the "worst case scenario" sentence he faced if convicted at trial was 262 to 327 months. (Id. at 43:19-25). Petitioner further

---

[1] The Court denied Petitioner's request to hold the October 20, 2009 hearing in abeyance and his Motion for Reconsideration of that denial. The Court proceeded to hold the hearing because it had initially scheduled the hearing over two years ago. The Court considered that because this case is eight years old, and Petitioner's underlying criminal conviction is older still, any further delay in holding the hearing would only make it more difficult for the witnesses concerned to accurately remember how the events at issue transpired. In addition, Petitioner's basis for holding the proceedings in abeyance was primarily the Motion for Recusal. Given that the Court had concluded that the Motion for Recusal was untimely and meritless, it did not deem it necessary to further delay the proceedings as result of its filing.

6

P-049

testified that Gutman never advised him that he was facing an additional enhancements a career criminal (Hr'g Tr. Oct. 20, 2009 at 44:25-45:6). At the close of the October 20, 2009 hearing, Petitioner's request to adjourn the hearing to allow another witness - A. Ross Pearlson, the former Assistant Unites States attorney assigned to Petitioner's 1991 narcotics prosecution ("Pearlson") - to testify was granted and the matter was continued to October 28, 2009.

Although Pearlson was present in this Court on October 28, 2009, Petitioner was not produced and the Hearing could not proceed. On December 2, 2009, the hearing resumed and the Court heard Pearlson's testimony. Pearlson's testimony largely contradicted Petitioner's assertions. In addition to having no recollection of any plea discussions regarding Petitioner, Pearlson confirmed that any plea offer would have to have been formalized in writing. (Hr'g Tr. Dec. 2, 2009 at 4:9-17; 22:8-23:3). Furthermore, Pearlson noted that in light of Petitioner's background, it was unlikely that any offer would have been made. (Id. at 4:9-5:11; 22:8-23).

## DISCUSSION

I.  The Motion to Amend

The Motion to Amend is denied because, as explained below, all three claims raised therein are not timely and do not relate back to the original claims in the Petition. In Mayle v. Felix, 545 U.S. 644 (2005), the Supreme Court

7

held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650. Thus, the Supreme Court has narrowly interpreted the permissible scope for amendments to habeas petitions; amendment is to be permitted only "[s]o long as the original and amended petitions state claims that are tied to a common core operative facts." Id. at 664.

### A. Illegal Sentence

The Motion to Amend first seeks to amend the Petition to include an argument that Petitioner's sentence was illegal because it did not include a term of supervised release on Count Four. This claim does not relate back to the claims in the Petition. The only claim in the Petition that challenged the legality of Petitioner's sentence was based on the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000) and asserted that the drug weight involved in his offenses increased his sentence beyond the statutory maximum, but was not alleged in the indictment or submitted to the jury to be proved beyond a reasonable doubt. As an initial matter, the Court rejected this argument in a Memorandum and Order dated February 22, 2005, holding that Apprendi does not apply retroactively to habeas petitions. (Dkt. No. 9 at 5-6; see also July 3, 2007 Order at 5, n.1.) Thus, this claim is no longer pending before the Court and cannot be amended.

P-049

In any event, Petitioner's argument in the Motion to Amend concerns supervised release and relies on different facts and a different legal theory than his Apprendi argument. As the Supreme Court explained in Mayle, a new claim does not "relate back" to an original claim simply because they both involve the same sentence. See Mayle, 545 U.S. at 662-64.

Even if it were timely, this claim would be barred by Petitioner's failure to raise it on appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998) (holding that relief under section 2255 "is an extraordinary remedy," not a substitute for a direct appeal). Claims not raised on direct appeal are deemed procedurally defaulted, see id. at 621-22, unless the petitioner "can first demonstrate either cause and actual prejudice or that he is actually innocent." Id. at 622 (internal citations and quotation marks omitted). To demonstrate cause, a petitioner must show that "some objective factor external to the defense" prevented him from raising the claim on appeal. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show "*actual* and substantial disadvantage," not merely the possibility of prejudice. Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1980) (emphasis in original). Finally, to show actual innocence, a petitioner must show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. Petitioner has not asserted actual innocence, nor does he point to any cause for his failure to raise this issue on appeal, nor any prejudice flowing therefrom.

P-049

B. Ineffective Assistance of Counsel for Failure to Challenge the Illegal Sentence

The second new claim flows from the first and argues that Petitioner received ineffective assistance of counsel because Gutman did not challenge the alleged illegal sentence. This claim does not relate back to the ineffective assistance of counsel claims raised in the Petition. The original claims focused on counsel's conduct during pre-trial preparation and during trial, but the new claim seeks to attack counsel's performance during sentencing. It is different in time and in type from the original claims. See Mayle, 545 U.S. at 650. It is not "sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original [habeas petition]." Reiter v. United States, 371 F. Supp. 2d 417, 423 (S.D.N.Y. 2005) (emphasis added); see also Veal v. United States, 2007 WL 3146925, *5-6 (S.D.N.Y. Oct. 9, 2007) (holding that a new ineffective assistance of counsel claim did not relate back to an original assistance of counsel claim).

C. The Court Knowingly Permitted Use of False Testimony

The Motion to Amend's third claim is that the Court suborned perjury and knowingly permitted the Government to convict Petitioner on the basis of false evidence. The heart of this argument is that the case agent in Petitioner's case, Special Agent Peter Amentas of the United States Customs Service ("Amentas"), testified inconsistently at trial concerning the location of the drugs during the controlled delivery. Petitioner conclusorily asserts that this

10

P-049

contradiction could not have escaped the Court's attention and that the Court should have known that controlled deliveries are not effected using the actual drugs, therefore the Court must have knowingly suborned Amentas' perjury. As will be discussed in greater detail below, with respect to the Motion for Recusal, there is no evidence of perjury and even less evidence that the Court suborned false testimony. For purposes of ruling on the Motion to Amend, however, it suffices to note that the Petition did not allege any judicial misconduct, therefore this claim also does not relate back.

As all three claims fail to relate back to the original claims in the Petition, the Motion to Amend is DENIED in its entirety as untimely.

II. The Motion for Recusal

As an initial matter, the Motion for Recusal is untimely. "To ensure that a party does not 'hedg [e] its bets against the eventual outcome' of a proceeding, a party must move for recusal 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" United States v. Amico, 486 F.3d 764, 773 (2d Cir. 2007) (quoting Apple v. Jewish Hosp. & Medical Center, 829 F.2d 326, 333-34 (2d Cir.1987)). Here, the Motion for Recusal was made eight years after the Petition was filed. While Petitioner claims it is based on his recently-filed Motion to Amend, the underlying facts were at issue in Petitioner's trial, in his Rule 33 motion, and on appeal. As a result, Petitioner

P-049

was well aware of the underlying facts long before he filed the Motion to Amend. He has not shown any good cause for the delay and it would be a waste of judicial resources to transfer the case now, after eight years have passed and after this Court has already ruled on all but one of Petitioner's claims. See Apple, 829 F.2d at 334.

Even if the Motion for Recusal were timely, it would nevertheless be denied on its merits. The bulk of the one hundred and eleven page Motion for Recusal is devoted to Petitioner's argument that Amentas committed perjury and that the Court suborned that perjury. The Court's review of the trial transcript indicates that it is indeed unclear whether or not Amentas removed the heroin from the suitcase prior to the controlled delivery, (Tr. at 55), or whether the drugs remained in the suitcase throughout the controlled delivery, (Tr. at 62).

The Court concludes that, despite this lack of clarity, there is no basis for concluding that Amentas committed perjury. Perjury occurs when a witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory. Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (internal citation omitted), cert. denied, 535 U.S. 1070 (2002). Here, Amentas testified that: "I observed Mr. Petitioner reach down in the smart card and pick up the suitcase containing the narcotics." (Tr. at 62). He earlier testified, however, that the packages containing the narcotics were removed

12

P-049

from Albino's suitcase prior to the controlled delivery and placed in a vault. (Tr. at 55). This inconsistency does not rise to the level of perjury. Moreover, there is no reason why Amentas should testify falsely about where the drugs were located during the controlled delivery because, as the Court has already concluded in the July 3, 2007 Order, "the actual location of the drugs at the time of the controlled delivery was irrelevant . . . Petitioner's failure to possess the heroin himself – if, in fact, the case agent truly had failed to return the drugs to the suitcase prior to the controlled delivery – would not have been fatal to his conviction on any of the narcotics related counts." (July 3, 2007 Order at 9). Furthermore, there is no evidence to support Petitioner's argument that the Court deliberately ignored this inconsistency in Amentas' testimony.

The rest of the Motion for Recusal is devoted to detailing other instances where Petitioner believes that the Court ruled against him because of bias or prejudice, including a strange allegation that the Court deleted other adverse rulings from the trial transcript. These allegations lack a basis in fact and are entirely conclusory. Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . Almost invariably, they are proper grounds for appeal, not for recusal." Liteky v. United States, 510 U.S. 540, 555-56 (1994).

The Motion for Recusal is therefore DENIED as untimely and without merit. In particular, the Court considers the Second Circuit's astute

P-049

admonition that judges "must be alert to avoid the possibility that those who would question [their] impartiality are in fact seeking to avoid the consequences of [the judge's] expected adverse decision." United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992). This consideration is particularly on point here, where the Court has already ruled against Petitioner on all of his claims except for one.

III. The Merits of Petitioner's Final Claim

The sole remaining claim is whether Petitioner received ineffective assistance of counsel with respect to his sentencing exposure. Specifically, Petitioner alleges that Gutman did not inform him that he could be deemed a career criminal offender and face life imprisonment. Petitioner further alleges that, if he had been so advised, he would have pleaded guilty to a plea agreement that would have allowed him to serve less time rather than go to trial and risk a life sentence.

To show ineffective assistance of counsel, a petitioner must satisfy a two prong test: (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 688-90 (1984). A party arguing ineffective assistance of counsel faces a heavy burden under this test. Id.; see also, U.S. v. Polanco, 2010

14

WL 625000 (2d Cir. Feb. 24, 2010); United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004).

While there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, underestimating a client's sentencing exposure is certainly grounds for finding that an attorney breached his duty to adequately advise his client. See, e.g., U.S. v. Gordon, 156 F.3d 376 (2d Cir. 1998). Here, although Petitioner's evidence is feeble, it not non-existent. While Gutman was unable to recollect many of the details of Petitioner's sentencing, he was able to identify a notation reading "262-327" on the back of a government discovery letter as his handwriting and testified that he was "reasonably sure" that the numbers related to calculating a sentence under the Sentencing Guidelines. (Hr'g Tr. Oct. 20, 2009 at 13:1-5). Gutman testified that he had no recollection of whether or not he received Petitioner's criminal record, but based on the practice in 1991, he believed he would have received a copy by the date of the superseding indictment (Id. at 17:22-18:1). Gutman admitted that if he knew the totality of petitioner's criminal history, then the calculations he identified would have been inaccurate. (Id. at 13:13-16).

However, whether or not Gutman's advice met the standards of professional conduct needed to overcome the first prong of Strickland, Petitioner's claim must fail because he cannot satisfy the second prong of Strickland, which requires a demonstration of prejudice. To show that that deficiency caused

prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also, Padilla v. Keane, 331 F.Supp.2d 209 (S.D.N.Y. 2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Furthermore, this Circuit has required more than a Petitioner's own post-conviction testimony to support a finding that there was a "reasonable probability" that the outcome of sentencing would have been different. Gordon, 156 F.3d at 380-81. Rather, a Petitioner must provide "objective evidence" to support a claim. Id.; see also, U.S. v. Polanco, 2010 WL 625000, *1 (2d Cir. Feb. 24, 2010).

There is absolutely no evidence, other than Petitioner's own testimony, to indicate that the Government was poised to offer Petitioner a plea agreement. At the October 20, 2009 hearing, Petitioner testified that, prior to October 1991, he had not received a plea offer from the Government, but that, after the superseding indictment (containing the witness tampering charge) was filed, Gutman told him that the Government was prepared to let him plead to "five to forty" on the conspiracy count and that the Government was interested in Petitioner cooperating against co-defendant Albino. (Hr'g Tr. Oct. 20, 2009 at 46:5-48:2, 58:11-59:8). Petitioner testified that he saw no logic in taking a plea agreement because Gutman told him he was facing twenty-one to twenty-seven years if convicted at trial and that if properly informed he would have taken a plea. (Id. at

16

48:11-24). However, Petitioner testified that he never received a written plea offer from the Government. (Id. at 51-53, 59.)

Aside from Petitioner's own statements, none of the other evidence presented at the hearing or in Petitioner's motion papers provides objective evidence to support his claim. Gutman testified that he had no recollection of whether he informed Petitioner that he faced a life sentence as a career offender or what advice, if at all, he gave Petitioner regarding what sentence he may anticipate after sentencing. (Hr'g Tr. Oct. 20, 2009 at 18:13-15). Gutman stated that he had no recollection about conducting any plea negotiations with the Government or of ever receiving a plea offer from the Government, (Id. at 19:20-20:7), and that, generally, Petitioner expressed an interest in going to trial. (Id. at 27:17-18). Gutman further testified that he had no recollection of whether the Government expressed an interest in having Petitioner cooperate against Mr. Albino. (Id. at 20:12-17). Gutman's testimony was supported by a review of Gutman's file for Petitioner, which disclosed no indication that any plea offer had been proffered by the government (Id. at 28:13-17). Finally, Gutman confirmed that despite any alleged errors in calculating the sentence, he continued to represent Petitioner on appeal. (Id. at 35).

Moreover, former AUSA Pearlson also testified that he had no recollection of any plea discussion with his supervisors regarding Petitioner. (Hr'g Tr. Dec. 2, 2009 at 4:9-17; 22:24-23:3). Pearlson's recollection was first, that any

P-049

plea offer would have to be formalized and sent in the form of a letter and second, that no plea offer would have been made following the superseding indictment since it was known by that point that Petitioner was engaging in witness tampering. (Id. at 4:9-5:4; 22:8-23). Regarding Gutman's offer for Petitioner's cooperation, Pearlson testified that given Petitioner's background, he would not have been inclined to accept any offering of cooperation." (Id. at 5:7-11). Pearlson had no recollection of any other offers. (Id. at 6:9-22; 7:11-23).

AUSA Pearlson and Gutman's accounts are both corroborated by the lack of evidence of any written plea offer ever being made to Petitioner, despite the fact that it was the United States Attorney's practice at the time to put all plea offers in writing. (Hr'g Tr. Dec. 12, 2009 22:8-23:3). No similar corroboration exists anywhere in the record for Petitioner's version of events.

Petitioner's final theory is that had he plead guilty, even if he would have faced the same sentence he faced after a jury verdict, he would have received a two-level reduction for acceptance of responsibility, reducing his Guidelines range to 292 – 365 months and permitting him to avoid a life sentence. (Pet. Mem. in Supp. at 21). However, as the Government points out in its papers, Petitioner would not have received acceptance points in the face of his engagement in obstruction of justice and witness intimidation. See U.S. Sentencing Guidelines Manual §3E1.1 cmt. 4 (1992). Furthermore, even with an acceptance of responsibility deduction, a sentence range of 292 -365 months, compared with the
18
P-049

262-327 months he was allegedly told he would face, does not constitute a "great disparity" sufficient to serve as "objective evidence" of Petitioner's claims. See United States v. Gordon, 156 F.3d at 381 (finding that a "great disparity" between a proffered plea sentence and the sentence actually imposed will support a conclusion that there is a reasonable probability that the defendant would have changed his plea).

Moreover, by his own account, Petitioner expressed no interest in cooperating against Albino or in pleading guilty until after the superseding indictment was filed – yet during this time, he was actively engaged in writing threatening letters to Albino. This suggests that Petitioner was committed to going to trial, not to exploring a plea.

Finally, if Gutman in fact miscalculated Petitioner's sentencing exposure prior to trial, Petitioner must have been aware of this alleged error at least by the time he received the presentence investigation report, which recommended that Petitioner be designated a career criminal offender and included a Guideline range of 360 months to life. At the very latest, therefore, Petitioner was aware of Gutman's alleged ineffective assistance at the time of sentence. Nevertheless, Petitioner proceeded to use Gutman as his counsel on appeal. This fact undermines Petitioner's present claim that Gutman misrepresented his sentencing exposure. See, e.g., Adorno v. U.S., 2005 WL 946619 (E.D.N.Y. April 18, 2005) (denying ineffective assistance of counsel despite counsel miscalculations where it was clear

P-049

that Petitioner was aware of the actual sentence before he was sentenced and failed to object).

Thus, Petitioner has not and cannot provide objective evidence to demonstrate that but for Gutman's advice he would have accepted a plea agreement that subjected him to a lower total offense level and Guideline range. As Petitioner has failed to demonstrate that he suffered any prejudice, he cannot prevail on his ineffective assistance of counsel argument and his claim is DENIED.

## CONCLUSION

For the foregoing reasons, the Motion to Amend, the Motion for Recusal, and the Motion for Reconsideration are all DENIED in their entirety. The remaining claim of the Petition, that Petitioner received ineffective assistance of counsel with respect to his sentencing exposure, is DENIED. All of Petitioner's remaining claims are without merit and are therefore likewise denied. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to close this case.

SO ORDERED.

DATED:
April 9, 2010
Brooklyn, New York

/S/
Sterling Johnson, Jr., Senior U.S.D.J.

20